AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
By:   ALINE R. FLODR
       STEPHANIE LAKE
       SHEB SWETT
       Assistant United States Attorneys
       One St. Andrew's Plaza
       New York, New York 10007
       (212) 637-1110

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
             Plaintiff,                       :
                                              :
      -v.-                                    :
                                              :
$4,556.30 IN UNITED STATES CURRENCY           :   VERIFIED CIVIL COMPLAINT
FORMERLY CONTAINED IN CITIBANK                :   FOR FORFEITURE
ACCOUNT 679-6579966, HELD IN THE              :
NAME OF "INTERNATIONAL PURCHASING             :   20 Civ. _____
ADVISORS, LLC";                               :
                                              :
$3,253.13 IN UNITED STATES CURRENCY           :
FORMERLY CONTAINED IN MERRILL                 :
LYNCH ACCOUNT 6JB07032, HELD IN THE           :
NAME OF "YELLOW CIRCLE LP";                   :
                                              :
$11,021.56 IN UNITED STATES CURRENCY          :
FORMERLY CONTAINED IN MERRILL                 :
LYNCH ACCOUNT 6JB07031, HELD IN THE           :
NAME OF "YELLOW CIRCLE LP";                   :
                                              :
$20,097.64 IN UNITED STATES CURRENCY          :
FORMERLY CONTAINED IN MERRILL                 :
LYNCH ACCOUNT 6JB07419, HELD IN THE           :

1

| | |
|---|---|
| NAME OF "YELLOW CIRCLE LP"; | : |
| | : |
| $155,666.93 IN UNITED STATES CURRENCY FORMERLY CONTAINED IN MERRILL LYNCH ACCOUNT 6JB07415, HELD IN THE NAME OF "YELLOW CIRCLE LP"; | : : : : |
| | : |
| ALL ASSETS CONTAINED IN MERRILL LYNCH ACCOUNT 77N07415, HELD IN THE NAME OF "YELLOW CIRCLE LP," AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST; | : : : : : |
| | : |
| ALL ASSETS CONTAINED IN MERRILL LYNCH ACCOUNT 6JB07415, HELD IN THE NAME OF "YELLOW CIRCLE LP," AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST; | : : : : : |
| | : |
| ALL ASSETS CONTAINED IN MERRILL LYNCH ACCOUNT 6JB07419, HELD IN THE NAME OF "YELLOW CIRCLE LP," AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST; | : : : : : |
| | : |
| ALL ASSETS CONTAINED IN MERRILL LYNCH ACCOUNT 6JB07031, HELD IN THE NAME OF "YELLOW CIRCLE LP," AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST; | : : : : : |
| | : |
| and | : |
| | : |
| | : |
| | : |
| | : |
| | : |

2

| | |
|---|---|
| ALL ASSETS CONTAINED IN MERRILL | : |
| LYNCH ACCOUNT 6JB07032, HELD IN THE | : |
| NAME OF "YELLOW CIRCLE LP," AND ALL | : |
| FUNDS TRACEABLE THERETO, | : |
| INCLUDING ACCRUED INTEREST; | : |
| | : |
| Defendants-*in-rem*. | : |
| | : |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | |

Plaintiff United States of America, by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title 18, United States Code, Section 981(a)(1)(A) and Title 21, United States Code, Section 881(a)(6) by the United States of America seeking the forfeiture of the following money and assets:

   a. $4,556.30 in United States currency formerly contained in Citibank account 679-6579966, held in the name of "International Purchasing Advisors, LLC";

   b. $3,253.13 in United States currency formerly contained in Merrill Lynch account 6JB07032, held in the name of "Yellow Circle LP";

   c. $11,021.56 13 in United States currency formerly contained in Merrill Lynch account 6JB07031, held in the name of "Yellow Circle LP";

   d. $20,097.64 in United States currency formerly contained in Merrill Lynch account 6JB07419, held in the name of "Yellow Circle LP";

   e. $155,666.93 in United States currency formerly contained in Merrill Lynch account 6JB07415, held in the name of "Yellow Circle LP";

3

    f.       All assets contained in Merrill Lynch account 77N07415, held in the name of "Yellow Circle LP," and all funds traceable thereto, including accrued interest;

    g.       All assets contained in Merrill Lynch account 6JB07415, held in the name of "Yellow Circle LP," and all fund traceable thereto, including accrued interest;

    h.       All assets contained in Merrill Lynch account 6JB07419, held in the name of "Yellow Circle LP," and all funds traceable thereto, including accrued interest;

    i.       All assets contained in Merrill Lynch account 6JB07031, held in the name of "Yellow Circle LP," and all funds traceable thereto, including accrued interest; and

    j.       All assets contained in Merrill Lynch account 6JB07032, held in the name of "Yellow Circle LP," and all funds traceable thereto, including accrued interest.

(1.a through 1.j collectively, the "Defendants-*in-rem*").

2. This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3. Venue is proper pursuant to Title 28, United States Code, Section 1395.

4. On or about May 20, 2020, agents of the United States Drug Enforcement Administration ("DEA") seized the Defendants-*in-rem* pursuant to seizure warrants issued by the United States District Court for the Southern District of New York during the course of the DEA's investigation into a money laundering operation of narcotics proceeds.

5. As set forth below, there is probable cause to believe that the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in violations of Title 18, United States Code, Sections 1956 (money laundering) and 1957 (monetary transactions involving property of specified unlawful activity),

or property traceable thereto, and pursuant to Title 21, United States Code, Section 881(a)(6) as moneys, negotiable instruments or securities furnished in exchange for a controlled substance, or proceeds traceable thereto, or as moneys, negotiable instruments or securities intended to be used to facilitate a violation of Subchapter I (Control and Enforcement) of Title 21.

## BASIS FOR PROBABLE CAUSE

### CS-1 and CS-2

6. In 2017 the DEA began investigating a group of narcotics traffickers and money launderers who operate in New York City, California, Mexico, Colombia, Hong Kong, and elsewhere (the "Investigation"). During the course of the Investigation, the DEA identified an individual who had laundered narcotics proceeds in New York City and other locations on behalf of money-laundering brokers located in Mexico ("Confidential Source-1" or "CS-1"). In or about 2018, CS-1 agreed to cooperate with law enforcement.

7. CS-1 confirmed for the DEA that he personally knew and worked with a Mexico-based money launderer ("Confidential Source-2" or "CS-2")[1] who coordinated the retrieval of narcotics proceeds in the United States on behalf of drug traffickers in Mexico and elsewhere. In or about April 2019, law enforcement approached CS-2, who agreed to cooperate with law enforcement.

### The Black Market Peso Exchange

8. In interviews with the Government, CS-1 and CS-2 have confirmed the existence of a large network of individuals, corporations, and shell entities that facilitate the

---

[1] Although CS-2 was not cooperating with law enforcement as a confidential source prior to April 2019, CS-2 is identified throughout this Complaint as CS-2 for consistency.

5

transfer of illicit proceeds around the world, and their past involvement in this network. In particular, CS-1 and CS-2 have described a process by which drug trafficking operations ("DTOs") based in Mexico and elsewhere transfer their narcotics proceeds from the United States to the country in which the DTO operates. DTOs, after having amassed bulk United States currency, will sell that currency to money-laundering brokers at a discount, who retrieve the bulk cash in the United States and deposit it into shell accounts in the United States while releasing pesos to the DTOs. At the same time, the money-laundering brokers will purchase bulk pesos from individuals in Mexico or elsewhere who wish to transfer money to the United States while circumventing the banking system. The money-laundering brokers will pay for these pesos by transferring narcotics proceeds from the U.S.-based shell accounts to accounts controlled by the individuals. This shadow financial system is commonly known as the Black Market Peso Exchange ("BMPE").

## The DEA Undercover Operation

9. At the direction of law enforcement, CS-1 and CS-2 continued to facilitate certain transactions on the BMPE in order to develop evidence for criminal prosecutions (the "DEA Undercover Operation"). When CS-1 and CS-2 bought narcotics proceeds on the BMPE, those funds were retrieved by either an undercover law enforcement officer or a cooperating source, and then deposited into a DEA undercover account until CS-1 and CS-2 received instructions about where to send the proceeds. Through the work of CS-1 and CS-2, the DEA has facilitated the transfer of approximately $20,000,000 in narcotics proceeds through undercover DEA accounts. Additionally, through information generated by the investigation, the DEA has seized approximately 245 kilograms of cocaine, 323 kilograms of fentanyl, 201

kilograms of heroin, 100 kilograms of methamphetamine, and 34 firearms, among other contraband.

10. In or about September or October 2018,[2] CS-2 spoke with an individual CS-2 had met in Mexico City ("Individual-1"). Through their discussion, CS-2 and Individual-1 realized that they were both in the business of "moving money." Individual-1 informed CS-2 that Individual-1 had access to a bank account in the United States that CS-2 could use to facilitate money transfers through and within the United States. Individual-1 explained that individuals living in the United States owned the account, but allowed him to use it.

11. Individual-1 subsequently provided CS-2 with the information for a bank account at Chase Bank held in the name of an international purchasing company, Company-1 (the "Company-1 Account").

12. Following that conversation, CS-2 provided the information for the Company-1 Account to CS-1. CS-2 instructed CS-1 to wire narcotics proceeds received in the United States to the Company-1 Account.

13. Between on or about October 9, 2018 and March 19, 2019, at the direction of CS-2,[3] the DEA wired approximately $3,810,130 in narcotics proceeds to the Company-1 Account.

The International Purchasing Account

14. In or about the beginning of 2019,[4] Individual-1 informed CS-2 that

---

[2] CS-2 was not cooperating with law enforcement at this time.

[3] CS-2 was not cooperating with law enforcement at this time.
[4] CS-2 was not cooperating with law enforcement at this time.

Individual-1 had access to additional bank accounts in the United States in the name of a company called International Purchasing Advisors, LLC ("International Purchasing"). Individual-1 explained that these accounts were owned by individuals living in the United States who allowed Individual-1 to use them. Individual-1 further explained that Individual-1 used these accounts to receive, sell, and remit narcotics proceeds and that CS-2 could use these accounts to facilitate money transfers through and within the United States.

15. On or about April 4, 2019, account 679-6579966 held in the name of International Purchasing Advisors, LLC was opened at Citibank (the "International Purchasing Account"). The business address associated with the International Purchasing Account was located in Manhattan, New York ("Building-1"). The address for the owner of Building-1 was the same address as that listed in the contact information for the Company-1 Account.

16. Individual-1 subsequently provided CS-2 with the account information for the International Purchasing Account, and in turn, CS-2 provided this information to CS-1. CS-2 instructed CS-1 to wire narcotics proceeds received in the United States to the International Purchasing Account.

17. Between on or about May 2, 2019, and July 24, 2019, pursuant to CS-2's direction, the DEA wired approximately $1,003,715 in narcotics proceeds to the International Purchasing Account.

18. Between on or about June 14, 2019 and July 10, 2019, the International Purchasing Account received five wires from an account at Banco Multiva (the "Banco Multiva Account") in the amounts of $50,000, $30,000, $30,000, $16,000, and $30,000. Individual-1 identified the Banco Multiva Account to CS-2 as an account that Individual-1 used to move and

8

sell narcotics proceeds.

### The Yellow Circle LP Accounts

19. Yellow Circle LP ("Yellow Circle") is described as a general partnership for family investments.

20. In or about October 2017, the employees of a U.S.-based trust company (the "Trustee") opened the following five accounts[5] in the name of Yellow Circle:

    a. Merrill Lynch account 77N07415 ("Yellow Circle Account-1");

    b. Merrill Lynch account 6JB07415 ("Yellow Circle Account-2");

    c. Merrill Lynch account 6JB07419 ("Yellow Circle Account-3");

    d. Merrill Lynch account 6JB07031 ("Yellow Circle Account-4"); and

    e. Merrill Lynch account 6JB07032 ("Yellow Circle Account-5")

(20.a through 20.e collectively, the "Yellow Circle Accounts").

21. The only authorized signatory and beneficial owner of the Yellow Circle Accounts was an individual who provided a phone number in Mexico as a means of contact ("Individual-2").

22. The Yellow Circle Accounts initially had limited transfer activity. In early 2019, however, the Yellow Circle Accounts began receiving hundreds of thousands of dollars in narcotics proceeds from the Company-1 Account and the International Purchasing Account, as alleged in further detail below.

---

5 At the same time, the Trustee opened three additional accounts at Merrill Lynch under the name of Yellow Circle LP: account number 77N07418 (the "77N07418 Account"), account number 77N07419 (the "77N07419 Account"), and account number 6JB07418 (the "6JB07418 Account.") While these three accounts no longer hold any assets and so are not included in the this Complaint, funds were transferred from these accounts to the Yellow Circle Accounts.

Yellow Circle Account-1

23. Beginning in or about February 2019, Yellow Circle Account-1 began receiving large wire deposits in rapid succession from the Company-1 Account.

24. Between on or about February 8, 2019 and on or about February 21, 2019, the Company-1 Account sent approximately five wires to the Yellow Circle Account-1, totaling approximately $249,927.11. These wires did not follow an observable pattern based on their timing or their amounts.

25. Following the wires from the Company-1 Account, no activity occurred in Yellow Circle Account-1 until on or about June 5, 2019, when Yellow Circle Account-1 began to receive wires from the International Purchasing Account. Between on or about June 5, 2019 and on or about June 20, 2019, the International Purchasing Account sent approximately seven wires to Yellow Circle Account-1, totaling approximately $442,343. These wires did not follow an observable pattern based on their timing or their amounts.

26. The wires from the Company-1 Account and the International Purchasing Account represented all but one transfer of money into or out of the Yellow Circle Account-1 from in or about January 2019 through in or about July 2019.

27. On or about July 12, 2019, Yellow Circle Account-1 transferred the full balance remaining in Yellow Circle Account-1, approximately $765,675.95, to Yellow Circle Account-2. As of in or about April 2020, no further activity occurred in Yellow Circle Account-1.

Yellow Circle Account-2

28. From the date of the opening of Yellow Circle Account-2 through on or

10

about July 12, 2019, there was no activity in Yellow Circle Account-2.

29. On or about July 12, 2019, Yellow Circle Account-1, which had received transfers of narcotics proceeds from the Company-1 Account and the International Purchasing Account, wired approximately $765,675.95 to Yellow Circle Account-2.

30. Yellow Circle Account-2 had no further activity until in or about November 2019. On or about November 14, 2019, the following three wire transfers were made from Yellow Circle Account-2: (i) $200,000 was wired to Yellow Circle Account-3; (ii) $195,000 was wired to Yellow Circle Account-4; and (iii) $70,000 was wired to Yellow Circle Account-5.

31. As of in or about April 2020, no further activity occurred in Yellow Circle Account-2. The account had a balance of approximately $155,666.93.

Yellow Circle Account-3

32. From the date of the opening of Yellow Circle Account-3 through on or about July 12, 2019, there was no activity in Yellow Circle Account-3.

33. On or about July 12, 2019, the 77N07419 Account, *See* ¶21 n.5, *supra*, transferred approximately $1,628,431.07 in securities and $20,300.66 in cash to Yellow Circle Account-3.

34. On or about November 14, 2019, Yellow Circle Account-2, which had received transfers of narcotics proceeds from Yellow Circle Account-1, wired approximately $200,000 to Yellow Circle Account-3.

35. As of in or about April 2020, no further activity occurred in Yellow Circle Account-3. The account had a balance of approximately $1,826,920.13.

Yellow Circle Account-4

36. From the date of the opening of Yellow Circle Account-4 through on or about September 12, 2019, there was no activity in Yellow Circle Account-4.

37. On or about September 12, 2019, the 6JB07418 Account, *See* ¶21 n.5, *supra,* transferred approximately $1,415,911.97 in securities to Yellow Circle Account-4.

38. On or about November 14, 2019, Yellow Circle Account-2, which had received transfers of narcotics proceeds from Yellow Circle Account-1, wired approximately $195,000 to Yellow Circle Account-4.

39. Based on the records from Yellow Circle Account-4, as of in or about April 2020 no further activity occurred in Yellow Circle Account-4, and it had a balance of approximately $1,606,988.33.

Yellow Circle Account-5

40. From the date of the opening of Yellow Circle Account-5 through on or about September 12, 2019, there was no activity in Yellow Circle Account-5.

41. On or about September 12, 2019, the 6JB07418 Account, *See* ¶21 n.5, *supra,* transferred approximately $500,075.09 in securities to Yellow Circle Account-5.

42. On or about November 14, 2019, Yellow Circle Account-2, which had received transfers of narcotics proceeds from Yellow Circle Account-1, wired approximately $70,000 to Yellow Circle Account-5.

43. As of in or about April 2020, no further activity occurred in Yellow Circle Account-5, and it had a balance of approximately $523,305.20.

### III. CLAIMS FOR FORFEITURE

### Forfeiture Under 18 U.S.C. § 981
### (Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. § 1956 or Property Traceable to Such Property)

44. Paragraphs 1 through 43 of this Complaint are repeated and re-alleged as if fully set forth herein.

45. By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A).

46. Title 18, United States Code, Section 981(a)(1)(A) subjects to civil forfeiture:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

47. Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), impose a criminal penalty on any person who:

> knowing that the property involved in a financial transaction involves the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> . . .
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity;
>
> . . .
>
> (B) knowing that the transaction is designed in whole or in part –
>
> > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

13

49. For purposes of Section 1956, "specified unlawful activity," defined in Title 18, United States Code, Section 1956(c)(7), includes, among other things, racketeering activity as defined in Title 18, United States Code, Section 1961(1). Section 1961(1), in turn, defines racketeering activity to include "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

**Forfeiture Under 18 U.S.C. § 981**
**(Property Involved in a Transaction or Attempted Transaction in Violation of**
**18 U.S.C. § 1957 or Property Traceable to Such Property)**

50. Paragraphs 1 through 43 of this Complaint are repeated and re-alleged as if fully set forth herein.

51. Pursuant to Title 18, United States Code, Section 981(a)(1)(A) any property, real or personal, involved in a transaction or attempted transaction in violation Title 18, United States Code, Section 1957, or any property traceable to such property, is subject to forfeiture to the United States.

52. Title 18, United States Code, Section 1957 imposes a criminal penalty on any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified

unlawful activity." Section 1957(f)(1) defines monetary transaction to include the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds . . . ."

53. As set forth above, *See* ¶¶ 46-49, s*upra*, dealing in controlled substances is a specified unlawful activity for the purposes of Section 1957.

54. By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as (i) property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1956, or property traceable to such property, and (ii) property involved in a monetary transaction in criminally derived property, in violation of Title 18, United States Code, Section 1957, or property traceable to such property.

### Forfeiture Under 21 U.S.C. § 881(a)(6)
### (Moneys or Other Things of Value Furnished in Exchange for a Controlled Substance)

55. Paragraphs 1 through 43 of this Complaint are repeated and re-alleged as if fully set forth herein.

56. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture all "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [Subchapter I of Title 21], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [Subchapter I of Title 21]."

57. Section 841, contained in Subchapter I of Title 21, provides, in relevant part, that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture,

15

distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

58. Section 846, also contained in Subchapter I of Title 21, provides, in relevant part, that any person who "conspires to commit" an offense in violation of the federal narcotics laws "shall be subject to the same penalties as those prescribed for the offense."

59. By reason of the foregoing, the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6) as money, negotiable instruments, or securities furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or as moneys, negotiable instruments or securities used or intended to be used to facilitate a violation of Subchapter I of Title 21.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      October 26, 2020

                          AUDREY STRAUSS
                          Acting United States Attorney for the
                          Southern District of New York
                          Attorney for the Plaintiff
                          United States of America

By: _____
                          ALINE R. FLODR
                          STEPHANIE LAKE
                          SHEB SWETT
                          Assistant United States Attorneys
                          One St. Andrew's Plaza
                          New York, New York 10007
                          Telephone: (212) 637-6522

## DECLARATION OF VERIFICATION

Daniel Socias, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Special Agent with the United States Drug Enforcement Administration; that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on October 26, 2020

_____
DANIEL SOCIAS
Special Agent
U.S. Drug Enforcement Administration

18